UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:09-CV-116-JHM

ALVAN C. MOORE                                                                                    PLAINTIFF

V.

BRANCH BANKING & TRUST COMPANY                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's, Branch Banking & Trust, Company (BB&T), Motion for Summary Judgment [DN 24]. Fully briefed, this matter is ripe for decision.

## I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could

reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

Moore opened a joint checking account with Irne Rowe in March 1996 at Owensboro National Bank (now BB&T). In connection with this account, Moore agreed to the terms of the bank's Deposit Account Agreement and Disclosure. In March 2002, Patricia Ann Moore was added to this joint account. When Patricia Ann Moore was added to the account, all three joint account holders agreed to the terms of the Deposit Account Terms and Conditions Disclosure, which is now called the Bank Services Agreement (BSA). The BSA states that "each joint owner shall have an equal and undivided interest in the entire account." The BSA also discloses that BB&T is authorized to withhold payments or place a hold on an owner's account when BB&T receives any notice of garnishment or execution of a judgment. Furthermore, the BSA provides that in the case of a dispute between the owner and BB&T, the account owner agrees to be liable to BB&T for litigation costs and reasonable attorneys' fees.

BB&T received an order of garnishment on November 5, 2009, which stated that Bank of America had a judgment against Patricia Ann Moore in the amount of $16,308.47. The order required BB&T to hold and safely keep any funds or property due Bank of America in the amount of $16,305.47 plus costs until further order of the court. At the time BB&T received the order of garnishment, Patrician Ann Moore had two accounts with BB&T, an account solely in her own name with a balance of $50 and also her joint account with Moore which had a balance of $1,088.26. However, included within the joint account balance was Moore's monthly Social Security disability payment of $773.00.

When BB&T received the order, it froze both of Patricia Ann Moore's accounts. BB&T then

issued a letter to each of the three account holders listed on the joint account explaining its actions and advising them to review the order of garnishment. The order of garnishment, which was attached to this letter, stated that some of the garnished funds may be exempt from garnishment, including Social Security Benefits, but that the account holder must claim and prove any applicable exemption. The order also contained information regarding how long the account holder had to seek an exemption and the proper form needed to request an exemption. Moore contends he never received this letter.

After BB&T's actions on November 5, Moore sent a document dated, November 11, 2010 and addressed to BB&T's CEO, Kelly King, titled "PLEASE TAKE NOTICE TO A CAUSE FOR ACTION." Neither Moore nor Patricia Ann Moore filed any documents with any court attempting to exempt Moore's Social Security disability benefits from garnishment. On November 17, BB&T responded to Moore's document and encouraged him to seek the advice of a licensed attorney.

BB&T waited fifteen days from the date it received the order of garnishment and then, receiving no further orders from the court, garnished the total sum of both accounts and forwarded that sum to the attorneys listed on the order of garnishment pursuant to Kentucky Rule of Civil Procedure 69.02(2). Moore then filed the current suit pro se.

### III. DISCUSSION

Moore's pro se complaint alleged violations of 42 U.S.C. §§ 1983, 1985(3), 1986, and negligent infliction of emotional distress due to the garnishment of his Social Security disability benefits. BB&T has moved for summary judgment as to all of Moore's claims.

### A. § 1983

"In order to establish liability under § 1983 for a cause of action other than a violation of procedural due process, a plaintiff must show that the defendants while (1) acting under color of state law (2) caused the deprivation of a federal right, constitutional or statutory." Hahn v. Star Bank, 190

F.3d 708, 717 (6th Cir. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)).  To satisfy the first element, acting under the color of state law, the allegedly unconstitutional act must be fairly attributable to the State.  American Mlfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999).

In Blum v. Yaretsky, 457 U.S. 991 (1982), the Supreme Court used the following three tests to determine if private actors met the state-action requirement under a Fourteenth Amendment claim: (1) the nexus test; (2) the state-compulsion test; and (3) the exclusive prerogative test.  Id. at 1004-05.  The nexus test requires "a sufficiently close nexus between the State and the challenged action of the regulated entity[,] . . . [such that] the action of the latter may be fairly treated as that of the State itself."  Id. at 1004.  The state-compulsion test requires the state to exercise coercive power or significant encouragement such that the action is deemed to be that of the state.  The exclusive prerogative test requires that the private individual has "exercised powers that are traditionally the exclusive prerogative of the State."  Id. at 1005.

The Court of Appeals for the Sixth Circuit has applied the Blum analysis to § 1983 actions against private individuals.  Paige v. Coyner, 614 F.3d 273, 279 (6th Cir. 2010); see e.g. Campbell v. PMI Food Equip. Group, Inc., 509 F.3d 776, 779, 783-84 (6th Cir. 2007) (manufacturing plant); Lansing v. City of Memphis, 202 F.3d 821, 825, 828-34 (6th Cir. 2000) (nonprofit festival organizer); Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 180 F.3d 758, 762 (6th Cir. 1999) (private, voluntary athletic association), *rev'd on other grounds*, 531 U.S. 288 (2001); Adams v. Vandemark, 855 F.2d 312, 313-14 (6th Cir. 1988) (nonprofit development corporation); Crowder v. Conlan, 740 F.2d 447, 449-50 (6th Cir. 1984) (private hospital).

Under none of the Blum tests is BB&T a state actor for purposes of § 1983.  There is no evidence that there is a nexus between the state and BB&T, such that BB&T's actions should be attributed to the state.  To the extent Moore claims BB&T's FDIC status is a nexus, mere regulation

4

is not enough to turn a private individual into a state actor. See American Mlfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999) (holding that an insurance company was not a state actor although it was subject to extensive state regulation). There is no evidence that the state coerced or encouraged BB&T's actions. Furthermore, the power to freeze, withhold, and transfer funds is not one traditionally in the exclusive prerogative of the state. Finding that BB&T was not acting under color of state law, Moore's § 1983 claim is dismissed. See e.g. Walton v. U.S.Bank, 2010 WL 3928507 (D. Utah 2010) (finding plaintiff's § 1983 claim failed to allege state action where defendant bank froze and transferred joint account holder's social security benefits according to valid garnishment order); Murphy v. Yates, 2005 WL 2989630 (E.D. Pa. 2005) (finding defendant bank's compliance with a valid garnishment order was not state action and, therefore, not a violation of § 1983).

### B. § 1985(3) and § 1986

Under § 1985(3), the Plaintiff must prove (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. Radvansky v. City of Olmsted Falls, 395 F.3d 291, 314 (6th Cir. 2005). Furthermore, the actions complained of by Plaintiff "must be the result of class-based discrimination." Vakilian v. Shaw, 335 F.3d 509, 518 (6th Cir. 2003). In the present case, there is no allegation that a conspiracy existed to deprive Plaintiff of equal privileges or immunities of the law. Nor is there evidence whatsoever that any of the actions taken by BB&T were the result of class-based discrimination. Therefore, BB&T's motion for summary judgment on this claim is granted.

A claim under § 1986 seeks to hold liable those who knew of a conspiracy in violation of § 1985(3). Accordingly "'[w]here plaintiff has stated no cause of action under § 1985 no cause of action

5

exists under § 1986.'" Radvansky, 395 F.3d at 315 (quoting Braley v. City of Pontiac, 906 F.2d 220, 227 (6th Cir. 1990)). Because Moore's § 1985(3) claim fails so to does his § 1986 claim. Therefore, BB&T's motion for summary judgment on this claim is granted.

### C. Negligent Infliction of Emotional Distress

Moore's final claim against BB&T is for negligent infliction of emotional distress due to the hold that BB&T instituted while responding to the order of garnishment. "Kentucky courts apply the 'impact rule' in determining whether a plaintiff may recover for negligent infliction of emotional distress. To recover damages in such an action, the plaintiff must suffer a physical impact or injury." Keeney v. Osborne, ---S.W.3d---, 2010 WL 743671 (Ky. Ct. App. March 5, 2010) (citing Steel Tech., Inc. v. Congleton, 234 S.W.3d 920, 928 (Ky. 2007)). There is no evidence that Moore was ever physically touched as a result of BB&T's actions. Therefore, Moore's negligent infliction of emotional distress claim is dismissed.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, BB&T, for summary judgment as to all of Plaintiff Moore's claims [DN 24] is **GRANTED**.

cc: counsel of record
Alvan C. Moore, pro se